**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mary Rayburn, an individual, | No. 06-CV-1590-PHX-SRB |
| Plaintiff, | **ORDER** |
| vs. | |
| City of Phoenix Housing Department, Section 8 Department; Kim Dorney Rodriguez, individually and in her official capacity as Deputy Director of the City of Phoenix Housing Section 8 Department; Paul Magallanez, individually and in his official capacity as Director of the Section 8 Department, | |
| Defendants. | |

Pending before this Court is Defendants City of Phoenix Housing Department; Kim Dorney Rodriguez, Deputy Director of the City of Phoenix Housing Section 8 Department; and Paul Magallanez's, Director of the Section 8 Department, Rule 12(b)(6) Motion to Dismiss Count III of Plaintiff's Complaint (Doc. 17).

**I.     BACKGROUND**

From August 2004 to November 10, 2005, Plaintiff Mary Rayburn, who states that she is mentally and physically disabled, lived in the Carob Tree apartment complex in Phoenix, Arizona. (Am. Compl. at 1-3.) During that time, "the Section 8 Housing Program for low-income tenants administered by the City of Phoenix Housing Department ("PHD")"

subsidized Plaintiff's rent. (Am. Compl. at 1.)[1] Operators of Carob Tree, following a dispute with Plaintiff, obtained a judgment ordering Plaintiff to vacate her apartment on October 31, 2005, a deadline later extended by mutual agreement to November 10, 2005. (Am. Compl. at 2.) On September 27, 2005, "Plaintiff, through counsel's office, met with a representative of PHD . . . requesting a new voucher and approval to relocate," but her request was denied. (Am. Compl. at 2.) Plaintiff, with assistance from her ValueOptions mental health caseworker,[2] relocated to a Motel 6, then moved into the Park Lee apartment complex in Phoenix on December 5, 2005. (Am. Compl. at 2.) Plaintiff alleges that upon leaving her Carob Tree apartment, Defendants "terminate[d] her from the program" because new PHD policies, including its "One Strike -- You're Out" policy concerning evictions and its policy restricting lease terminations to the anniversary date of the lease, required the termination of her Section 8 benefits. (Am. Compl. at 2-3.) Plaintiff alleges that Defendants' policy, while facially neutral, discriminates against disabled individuals, and that she "suffered homelessness and became indebted to her landlord by the failure of the PHD to properly administer the rent subsidies." (Am. Compl. at 3.)

Plaintiff filed a five-count Complaint on June 21, 2006, and an Amended Complaint on June 5, 2007.[3] Count III of the Amended Complaint, at issue in the pending Motion to Dismiss, alleges that Defendants violated the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, "[b]y severely limiting the rights of Section 8 tenants to move, by failing to allow Plaintiff to relocate, and by terminating federal assistance without grounds or due process."

---

[1]Section 8 participants in Phoenix select housing, then submit their proposed lease agreements to the PHD, which inspects the premises and decides whether to approve the lease. (Am. Compl. at 7.) If the PHD approves the lease, the agency subsidizes the tenant's rent through payments to the landlord. (Am. Compl. at 7.)

[2]ValueOptions, the mental health services provider contracted by Maricopa County, Arizona, is not affiliated with the PHD.

[3]Plaintiff dropped her Arizona Fair Housing Act claim in the Amended Complaint, therefore, the Court need not address Plaintiff's Motion to Dismiss on this allegation.

- 2 -

(Am. Compl. at 15.) Defendants' policies, Plaintiff argues, "have resulted in a disparate impact on protected classes, particularly Section 8 participants who are disabled." (Am. Compl. at 15.) Defendants filed this Motion to Dismiss on January 29, 2007, claiming that Plaintiff's "Count III fails to state a claim upon which relief can be granted." (Defs.' Rule 12(b)(6) Mot. to Dismiss Count III of Pl.'s Compl. ("Defs.' MTD") at 1-2.)

## II.   LEGAL STANDARDS AND ANALYSIS

The Federal Rules of Civil Procedure require a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997). Thus, dismissal for insufficiency of a complaint is proper if, on its face, the complaint fails to state a claim. *Lucas v. Bechtel Corp.*, 633 F.2d 757, 759 (9th Cir. 1980). A Rule 12(b)(6) dismissal for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir. 1984).

In determining whether a complaint states a valid claim, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). "The Rule 8 standard contains 'a powerful presumption against rejecting pleadings for failure to state a claim.'" *Gilligan*, 108 F.3d at 249 (quoting *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir.1985)). As for the factual allegations, the Supreme Court recently explained that they "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).[4] In ruling on a motion to dismiss, "'the issue is not

---

[4]In *Twombly*, the Supreme Court rejected the well-known holding in *Conley v. Gibson*, that "'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitled him to relief.'" *Id.* at 1969 (quoting *Conley*, 355 U.S. 41, 45-46 (1957)) (observing that the "'no set of facts' language [in *Conley*] . . . is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated

- 3 -

1  whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer
2  evidence to support the claims.'" *Gilligan*, 108 F.3d at 249 (quoting *Scheuer v. Rhodes*, 416
3  U.S. 232, 236 (1974)).

4        The FHA makes it illegal both "[t]o discriminate in the sale or rental, or to otherwise
5  make unavailable or deny, a dwelling to any buyer or renter because of a handicap."  42
6  U.S.C. § 3604(f)(1), and "[t]o discriminate against any person in the terms, conditions, or
7  privileges of sale or rental of a dwelling, or in the provision of services or facilities in
8  connection with such dwelling because of a handicap,"  42 U.S.C. § 3604(f)(2).
9  "[D]iscrimination includes . . . a refusal to make reasonable accommodations in rules,
10 policies, practices, or services, when such accommodations may be necessary to afford such
11 person equal opportunity to use and enjoy a dwelling.  42 U.S.C. § 3604(f)(3).  "Dwelling"
12 is defined in the FHA as "any building, structure, or portion thereof which is occupied as, or
13 designed or intended for occupancy as, a residence . . . ."  42 U.S.C. § 3602(b).  The United
14 States Supreme Court has noted that "[t]he language of the [FHA] is broad and inclusive."
15 *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972).  Given the FHA's expansive
16 language, courts have permitted suits to proceed against providers of Section 8 vouchers
17 under the FHA.  *See Allen v. Muriello*, 217 F.3d 517, 522 (7th Cir. 2000) (holding a Section
18 8 applicant could sue a city housing authority for discrimination under the FHA); *Hinneberg*
19 *v. Big Stone Country Hous. and Redev. Auth.*, 706 N.W.2d 220, 225 (Minn. 2005) (holding
20 "that the broad phrase in the [FHA] -- 'to otherwise make unavailable or deny' a dwelling --
21 makes the [FHA] applicable to public housing authorities administering Section 8 housing
22 voucher programs" (quoting 42 U.S.C. § 3604(f)(1))); *Garcia v. Wash. County Dep't of*
23 *Hous. Servs.*, 2006 WL 897984, *2, *5 (D. Or. March 31, 2006) (finding that the FHA
24 applies to public housing authority that provided Section 8 vouchers and noting that "the

---

adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint").

- 4 -

1 Ninth Circuit has repeatedly interpreted [FHA] language as imposing an affirmative duty on
2 . . . public agencies to reasonably accommodate the needs of disabled individuals" (internal
3 quotations and citations omitted)); *Sierotowicz v. New York City Hous. Auth.*, 214 Fed. Appx.
4 101, 103 (2d Cir. 2007) (holding Section 8 tenant "adequately" stated a discrimination claim
5 against housing authority under the FHA).

6 Defendants contend that a violation of the FHA "require[s] that the defendant
7 discriminate in providing a 'dwelling,'" (Defs.' MTD at 2), and that "the City does not
8 provide housing to any of the Section 8 participants and therefore is not in a position to deny
9 dwellings to anyone." (Defs.' MTD at 4.) However, the "broad and inclusive" language of
10 the FHA, *Trafficante*, 409 U.S. at 209, is not limited merely to providers of housing. *See*
11 *Allen*, 217 F.3d at 522. The FHA also prohibits any practice that "otherwise make[s]
12 unavailable . . . a dwelling to any buyer or renter because of a handicap." 42 U.S.C. §
13 3604(f)(1). Defendants, by withholding Section 8 benefits from those who rely on the funds
14 to secure a dwelling, hold the power to make housing unavailable. Thus, Plaintiff states a
15 claim under the FHA when she alleges that Defendants' termination of Section 8 benefits
16 made a dwelling unavailable to her.

17 Next, Defendants argue that the eviction action instituted by Plaintiff's Carob Tree
18 landlord, rather than any action taken by the PHD, resulted in Plaintiff being denied a
19 dwelling. (Defs.' MTD at 5.) However, Plaintiff's Count III does not address the eviction
20 from Carob Tree. Rather, Plaintiff claims that Defendants discriminated against her as she
21 sought new housing by denying her request to relocate and terminating her from the Section
22 8 program. (Am. Compl. at 15.) Any actions taken by Carob Tree's management are
23 separate from the actions alleged in Plaintiff's Count III.

24 Defendants' third contention is that since Plaintiff "was never without a
25 dwelling"–having moved from her Carob Tree apartment to a Motel 6, and then into the Park
26 Lee apartment complex–no dwelling was denied. (Defs.' MTD at 5.) This argument, which
27 Defendants provide no legal authority for in their Motion, finds no support in the language
28

- 5 -

1  of § 3604(f). To state a claim under § 3604(f), Plaintiff need not demonstrate that she was
2  rendered homeless by Defendants' actions, only that Defendants' acts made housing
3  unavailable to her. Similarly, Defendants' argument that Plaintiff must, under § 3604(f),
4  allege that she was denied a "discernable piece of real property," (Defs.' MTD at 6),
5  misconstrues the law. Nothing in § 3604 requires Plaintiff to make such an allegation. In
6  fact, § 3604(f) merely contemplates the involvement of "a dwelling," even if such dwelling
7  is only prospective. *See Allen*, 217 F.3d at 522 (allowing a FHA claim where the plaintiff
8  alleged discrimination during the application process, well before a potential dwelling was
9  specified).

10  Finally, Defendants dispute whether Plaintiff's Count III supports a "disparate impact
11  claim," which they argue requires Plaintiff to demonstrate both "denial of a dwelling," and
12  "'a significantly adverse or disproportionate impact on persons of a particular type produced
13  by the defendant's facially neutral acts or practices.'" (Defs.' MTD at 6 (quoting *Gamble*
14  *v. City of Escondido*, 104 F.3d 300, 306 (9th Cir. 1997) (affirming summary judgment on a
15  disparate impact claim because the plaintiff "presented no statistics or other proof
16  demonstrating that the city's permit practices have a significantly adverse or disproportionate
17  impact on the physically disabled" (citation omitted))).) To state a disparate impact claim,
18  Plaintiff need only allege that Defendants' policies have negatively affected disabled
19  individuals in a manner not experienced by other groups. *Gamble*, 104 F.3d at 306.
20  Plaintiff's Amended Complaint alleges that Defendants' "One Strike – You're Out" policy
21  on evictions, and its ban on moves made outside a lease anniversary date, while facially
22  neutral, have a discriminatory impact on disabled people. In support of this assertion,
23  Plaintiff relies on the facts surrounding her own termination from and denial of continuing
24  Section 8 benefits. Plaintiff need not prove discriminatory impact in her Amended
25  Complaint. It is enough that Plaintiff has come forth with "facts consistent with the
26  allegations in the complaint." *Twombly*, 127 S. Ct. at 1969.

1   **IT IS ORDERED** denying Defendants' Rule 12(b)(6) Motion to Dismiss Count III
2   of Plaintiff's Complaint (Doc 17).

4   DATED this 7th day of August, 2007.

_____
Susan R. Bolton
United States District Judge