**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mary Rayburn, an individual,<br><br>    Plaintiff,<br><br>vs.<br><br>City of Phoenix Housing Department, Section 8 Department; Kim Dorney Rodriguez, individually and in her official capacity as Deputy Director of the City of Phoenix Housing Section 8 Department; Paul Magallanez, individually and in his official capacity as Director of the Section 8 Department,<br><br>    Defendants. | No. 06-CV-1590-PHX-SRB<br><br>**ORDER** |

Pending before this Court are Defendant City of Phoenix Housing Department's Motion for Summary Judgment (Doc. 63) and Plaintiff Mary Rayburn's Motion for Partial Summary Judgment (Doc. 61).[1]

**I.    BACKGROUND**

The facts in this case are undisputed. From August 2004 to November 2005, Plaintiff Mary Rayburn, who is mentally and physically disabled and subsists on Social Security Disability payments and food stamps, lived in the Carob Tree apartment complex in Phoenix,

---

[1] All other Defendants named in the above caption have been dismissed from this action. (*See* Doc. 51.)

Arizona. During that time, Plaintiff participated in the federally funded Section 8 housing program for low-income tenants administered by the City of Phoenix Housing Department.[2] In the Summer and Fall of 2005, Carob Tree issued a series of written notices to Plaintiff for various lease violations. This landlord-tenant tension culminated on September 7, 2005 when Carob Tree filed a forcible detainer action against Plaintiff and served her with the summons and complaint which advised her of a September 14, 2005 trial date. The forcible detainer complaint alleged that Plaintiff was in violation of her lease for nonpayment of rent and for certain violations set forth in a written notice dated August 13, 2005. The August 13 notice accuses Plaintiff of breaching the terms of her lease by engaging in excessive yelling and door slamming. Prior to the trial date, Plaintiff and Carob Tree reached an agreement permitting Plaintiff to remain in her apartment until October 31, 2005. As part of this understanding, Plaintiff agreed not to contest the forcible detainer action. Accordingly, Plaintiff did not appear at the trial and a default judgment was entered against her. Following the forcible detainer trial date and before her agreed upon move-out date, Plaintiff and Carob Tree again disagreed about whether she was complying with her lease obligations. Namely, Carob Tree issued Plaintiff a notice for nonpayment of rent on September 22, 2005. Eventually, Carob Tree sought and was granted a writ of restitution dated November 7, 2005.

In September 2005 Plaintiff sought the assistance of Community Legal Services ("CLS"), her counsel in the instant case. On November 9, 2005, Plaintiff, through CLS, faxed Defendant a letter dated November 7, 2005 requesting a reasonable accommodation and asking that she be allowed to move to new housing. This request was transmitted by

---

[2] 24 C.F.R. § 982.1(a) provides a general description of the Section 8 program. "In the HUD Housing Choice Voucher Program . . . HUD pays rental subsidies so eligible families can afford decent, safe and sanitary housing. Both programs are generally administered by State or local governmental entities called public housing agencies (PHAs). HUD provides housing assistance funds to the PHA. HUD also provides funds for PHA administration of the programs . . . . Families select and rent units that meet program housing quality standards. If the PHA approves a family's unit and tenancy, the PHA contracts with the owner to make rent subsidy payments on behalf of the family."

- 2 -

1  facsimile without follow-up by hard copy letter or telephonic communication. Defendant
2  contends that it did not receive Plaintiff's November 9 request. On November 22, 2005,
3  Plaintiff for a second time faxed the November 7 letter to Defendant. Defendant admits
4  receiving the second fax on or about November 22. On December 9, 2005, Defendant mailed
5  Plaintiff a notice of termination of housing assistance. The letter advised Plaintiff that she
6  would be terminated from the Section 8 housing assistance program effective December 23,
7  2005. The letter further stated that Plaintiff had the right to submit a written request for an
8  informal hearing no later than the termination date, December 23, 2005. The notice of
9  termination was mailed exclusively to Plaintiff's Carob Tree residence even though
10 Defendant knew that Plaintiff was no longer residing at that address. Defendant was
11 operating under the assumption that Plaintiff had taken steps with the U.S. Postal Service to
12 arrange the forwarding of her mail. However, despite Plaintiff's claim that she took steps
13 to have her mail forwarded, she clearly did not as there was no forwarding address on file as
14 late as March 17, 2006. The December 9 notice of termination was returned to Defendant
15 marked with the notations  "moved left no address," "unable to forward," and "return to
16 sender." (Def.'s Statement of Facts in Supp. of its Mot. for Summ. J. ("Def.'s Mot., DSOF"),
17 Ex. U.)

18      Plaintiff's November 7, 2005 reasonable accommodation request, received by
19 Defendants on November 22, 2005, was fewer than two pages in length and, after requesting
20 that Plaintiff be permitted to relocate while retaining her Section 8 assistance, concluded with
21 the statement: "Please advise me as soon as possible. My direct line is (602) 258-3434,
22 extension 2700." (Def.'s Mot., DSOF, Ex. S.) The reasonable accommodation request,
23 signed by Plaintiff's attorney, Jeffrey Kastner, was drafted on CLS letterhead bearing CLS's
24 physical address, telephone number, and fax number. When Defendant mailed the
25 termination notice seventeen days after receiving the reasonable accommodation request, a
26 copy was not sent to Mr. Kastner. Following receipt of the undeliverable termination letter,
27 Defendant did not attempt to contact Plaintiff through her attorney. On January 24, 2006,
28

1  upon learning of the termination letter, Mr. Kastner transmitted a letter to Defendant
2  requesting a hearing and informing it that neither he nor Plaintiff had received the
3  termination notice. Mr. Kastner's request for a pre-termination hearing was denied and
4  Plaintiff was terminated from the program.

5  Plaintiff filed a five-count Complaint on June 21, 2006, and a First Amended
6  Complaint on June 5, 2007. The Amended Complaint alleges four separate substantive
7  counts: (1) violation of Section 8 of the United States Housing Act of 1937, as amended by
8  the Quality Housing and Work Responsibility Act of 1998; (2) violation of the Fourteenth
9  Amendment's Due Process Clause; (3) violation of the Fair Housing Act; and (4) violation
10 of the Quality Housing and Work Responsibility Act of 1998. As Plaintiff pointed out in the
11 opening lines of her Response, Defendant's Motion should have been styled as a partial
12 motion for summary judgment because it only addresses the Fair Housing Act claim.
13 However, at oral argument Defendant clarified that it is seeking summary judgment on all
14 of Plaintiff's claims. Typically the Court will not address issues unless explicitly raised by
15 the moving party, however, here Plaintiff alleviated the need for restraint by filing her own
16 Motion wherein all of the remaining claims are addressed. Plaintiff's Motion, which is titled
17 a partial motion, requests summary judgment on Counts I through III. Thus, only Defendant
18 has asked for summary judgment on Count IV. Count IV concerns a pure question of law
19 and is appropriate for resolution by the Court at this time.

20 While the issues have not been presented to the Court in the most efficient manner,
21 they are nonetheless properly before the Court. There are no genuine issues of material fact
22 in this case. All of the outstanding issues are questions of law which the Court may properly
23 resolve at this time.

24 **II.   LEGAL STANDARDS AND ANALYSIS**

25 The standard for summary judgment is set forth in Rule 56(c) of the Federal Rules of
26 Civil Procedure. Under Rule 56, summary judgment is properly granted when: (1) no
27 genuine issues of material fact remain; and (2) after viewing the evidence most favorably to

- 4 -

1 the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R.
2 Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of*
3 *N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). A fact is "material" when, under the
4 governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty*
5 *Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises if "the
6 evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

7 In considering a motion for summary judgment, the court must regard as true the
8 non-moving party's evidence, if it is supported by affidavits or other evidentiary material.
9 *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party
10 may not merely rest on its pleadings; it must produce some significant probative evidence
11 tending to contradict the moving party's allegations, thereby creating a material question
12 of fact. *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative
13 evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l*
14 *Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

15 **A.  Section 8 of the United States Housing Act of 1937, as Amended**

16 In administering Section 8 housing assistance, the local public housing authority
17 ("PHA") must comply with the various regulations setting forth the requirements of the
18 program. One such regulation, 24 C.F.R. § 982.552, describes in detail when a PHA may
19 terminate a program participant. A PHA has the "[a]uthority to deny admission or terminate
20 assistance" if, among other reasons, "any member of the family has been evicted from
21 federally assisted housing in the last five years." 24 C.F.R. § 982.552(c)(ii). Using this
22 authority, and other justifications, Defendant terminated Plaintiff from the Phoenix Section
23 8 program. It is undisputed that Plaintiff had been "evicted from federally assisted housing
24 in the last five years." Accordingly, Defendant argues that it was justified in terminating
25 Plaintiff's voucher under the plain language of the regulation.

26 Plaintiff contends that "Defendant violated the Act . . . by failing to transfer her
27 voucher, [and] arbitrarily terminating her without determining whether she had committed

28

a serious or repeated lease violation." (Pl.'s Mem. in Supp. of her Mot. for Partial Summ. J. ("Pl.'s Mot.") at 6.) Plaintiff's first argument, that her voucher should have been transferred, is not supported by any discernible legal theory. Quite simply, Plaintiff has not pointed to any law that would have required the transfer of her voucher. There is no question that Defendant could have elected to transfer Plaintiff's voucher had it chosen to do so, however, it did not, and that choice was committed to Defendant's discretion.[3]

Next, Plaintiff argues that "[u]nder the [Department of Housing and Urban Development ("HUD")] regulations, Defendant must terminate assistance *only* for 'serious' lease violations." (Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for Partial Summ. J. ("Pl.'s Reply") at 4 (citing 24 C.F.R. § 982.552(b)(2)).) Here there was no determination that Plaintiff's eviction was based on "serious" lease violations, and thus Plaintiff argues that it was improper to terminate her assistance. In one sense, Plaintiff is correct: it would be improper for a PHA to terminate assistance using § 982.552(b)(2) as its sole justification without first investigating whether the lease violation underlying the eviction was "serious." Had HUD intended that every family subject to an eviction be terminated from Section 8, then it would not have included the qualifier that the underlying lease violation be "serious." However, it is important to separate the two subsections at issue, § 982.552(b)(2) and § 982.552(c)(ii). The former pertains to a situation where the PHA *must* terminate assistance; the latter describes a circumstance where the PHA *may* terminate assistance.

---

[3] It appears that this failure-to-transfer argument is related to the position taken by Plaintiff in her Reply that Defendant's policy restricting the timing of participant relocations is in direct conflict with HUD regulations. Plaintiff complains that Defendant impermissibly limits transfers to the annual lease renewal date, even where the participant lived at the location beyond the initial one-year lease term. Regardless of whether this policy is in compliance with HUD regulations, it is irrelevant to Plaintiff's factual position and, therefore, may not serve as the basis for her claim. The uncontroverted evidence shows that by the time Plaintiff requested a transfer, she had been evicted from her housing. This eviction caused Defendant to terminate Plaintiff's housing assistance. Therefore, Plaintiff was ineligible for a transfer at the time she requested one. Because Plaintiff was ineligible for a transfer, she may not challenge Defendant's policies concerning timing of transfers.

In this case, it is clear that Defendant did not have to terminate Plaintiff's assistance. There was no finding that the lease violations that gave rise to the eviction were "serious," therefore termination was not mandated by § 982.552(b)(2). However, it cannot be reasonably disputed that § 982.552(c)(ii) gave Defendant the discretionary authority to terminate Plaintiff, and that is exactly what it chose to do. While Plaintiff is clearly disappointed with Defendant's exercise of discretion, that does not mean that either the United States Housing Act of 1937, as amended, or any of the regulations promulgated thereunder, have been violated by Defendant's conduct. Taking the evidence and arguments in the light most favorable to Plaintiff, no material issues of fact exist and Defendant prevails as a matter of law on Plaintiff's Section 8 claim.[4]

### B. Procedural Due Process

Before a PHA may terminate a participant from a Section 8 program, the participant is entitled to the constitutionally mandated minimum amount of procedural due process. *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976) (creating a three-part test for use in determining what process is required to comport with constitutional requirements). HUD has promulgated a regulation specifying what process is to be afforded participants who face potential termination, and neither party challenges the constitutionality of this regulation. The regulation provides:

(a) When hearing is required. --

---

[4] The Court notes the existence of a serious question as to whether 42 U.S.C. § 1983 creates a cause of action for the violations of federal regulations and federal statutes asserted by Plaintiff. *See Caswell v. City of Detroit Housing Comm'n*, 418 F.3d 615, 618-20 (6th Cir. 2005). Recognizing this, Plaintiff offered substantial argument on this issue in its Motion for Partial Summary Judgment. (*See* Pl.'s Mot. at 4-6.) Defendant's Response fails to even address the issue or raise the possibility that § 1983 may not create a federal cause of action for Plaintiff's claims. Rather than undertake an analysis of this issue without the benefit of Defendant's argument, the Court resolved the matter by identifying a separate fatal flaw in Plaintiff's claim. This Order does not address whether the federal statutes or regulations cited herein create rights enforceable through § 1983.

- 7 -

> (1) A PHA must give a participant family an opportunity for an informal hearing to consider whether the following PHA decisions relating to the individual circumstances of a participant family are in accordance with the law, HUD regulations and PHA policies:
> . . .
> (v) A determination to terminate assistance for a participant family because of the family's action or failure to act (see § 982.552).
> . . .
> (2) In the cases described in paragraphs (a)(1)(iv), (v) and (vi) of this section, the PHA must give the opportunity for an informal hearing before the PHA terminates housing assistance payments for the family under an outstanding HAP contract.
> (c) Notice to family.
> (2) In the cases described in paragraphs (a)(1)(iv), (v) and (vi) of this section, the PHA must give the family prompt written notice that the family may request a hearing.

24 C.F.R. § 982.555. Plaintiff argues that Defendant violated her right to procedural due process by failing to provide the notice as required by § 982.555. Defendant counters that it provided Plaintiff with written notice of her right to a hearing, but that Plaintiff waived her right to a hearing by failing to request the hearing within the time period set forth in the notice of termination.

The facts surrounding the notice of termination were described above and do not necessitate repeating here. Plaintiff is mentally and physically disabled and to assist her in presenting her argument to Defendant, she retained counsel. Dealing with individuals represented by counsel is not unexpected by Defendant. In fact, 24 C.F.R. § 982.555(e)(3) explicitly states that during the pre-termination hearing, "the family may be represented by a lawyer." Defendant knew that Plaintiff was represented by counsel even before receipt of the November 7, 2005 letter on November 22, 2005, because it had spoken on the phone with Plaintiff's counsel prior to receiving the letter. Nonetheless, when Defendant issued the notice of termination only seventeen days after receiving Plaintiff's letter, it chose to mail that letter directly to Plaintiff's old address—where it knew she was no longer residing—without a copy to Plaintiff's counsel. This in spite of the fact that Plaintiff's November 7 letter had concluded by asking that communications be directed to Mr. Kastner. What is more, when Defendant received the notice of termination marked undeliverable by

1 the post office, it did not then attempt to contact Plaintiff's counsel, it merely allowed the
2 time for appeal to expire knowing that Plaintiff could not possibly learn of the adverse action
3 being taken against her.

4 Upon realizing what had transpired, Mr. Kastner submitted a letter explaining the
5 situation and requesting a hearing. This letter was transmitted approximately one month after
6 the final date on which Plaintiff could have requested an appeal pursuant to the notice of
7 termination. Instead of erring on the side of providing due process, Defendant denied the
8 hearing request. The actions of Defendant in this case simply cannot comport with the
9 constitutional minimum of due process. While Defendant is not obligated to go out of its
10 way to locate a participant before terminating her voucher, it may not affirmatively conduct
11 itself in a manner that makes process inaccessible.

12 To comply with the law, Defendant was required to provide notice in accordance with
13 § 982.555(c). By failing to notify Plaintiff's attorney—who Defendant knew to be
14 representing Plaintiff in this matter—Defendant did not properly notify Plaintiff, and
15 therefore violated § 982.555(c) and the Fourteenth Amendment. Viewing the evidence of
16 the alleged due process violation in the light most favorable to Defendant, no material issues
17 of fact exist and Plaintiff is entitled to judgment as a matter of law. Plaintiff shall have the
18 opportunity at trial to demonstrate what damages, if any, she sustained as a result of the due
19 process deprivation.

20 **C. The Fair Housing Act**

21 The Fair Housing Act ("FHA") makes it unlawful both "[t]o discriminate in the sale
22 or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because
23 of a handicap." 42 U.S.C. § 3604(f)(1), and "[t]o discriminate against any person in the
24 terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services
25 or facilities in connection with such dwelling because of a handicap," 42 U.S.C. §
26 3604(f)(2). "[D]iscrimination includes . . . a refusal to make reasonable accommodations in
27 rules, policies, practices, or services, when such accommodations may be necessary to afford

28

1   such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3).
2   "Congress extended the FHA's protection to handicapped persons in the Fair Housing
3   Amendments Act of 1988 ("FHAA"), Pub. L. 100-430, 102 Stat. 1619." *United States v.*
4   *Cal. Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1416 (9th Cir. 1994).

5   In this case, Plaintiff requested a reasonable accommodation in her November 7 letter
6   and she argues that Defendant failed to consider her request and declined to offer an
7   accommodation. The Ninth Circuit has consistently held that the language of the FHAA
8   "impos[es] an 'affirmative duty' on landlords and public agencies to reasonably
9   accommodate the needs of disabled individuals." *McGary v. City of Portland*, 386 F.3d
10  1259, 1261 (9th Cir. 2004) (quoting *Giebeler v. M&B Assocs.*, 343 F.3d 1143, 1146 (9th Cir.
11  2003)). To establish an FHAA discrimination claim for failure to offer a reasonable
12  accommodation, a plaintiff must demonstrate that "(1) 'he suffers from a handicap as defined
13  by the FHAA;' (2) the City 'knew or reasonably should have known of' [the plaintiff's]
14  handicap; (3) 'accommodation of the handicap 'may be necessary' to afford [the plaintiff]
15  an equal opportunity to use and enjoy [her] dwelling;' and (4) the City 'refused to make such
16  accommodation.'" *Id.* at 1262 (quoting *Giebeler*, 343 F.3d at 1146-47 (quoting *United States*
17  *v. California Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997))).

18  The outcome of Plaintiff's claim hinges exclusively on the third requirement.
19  Defendant contends that Plaintiff cannot establish an FHA violation because the reasonable
20  accommodation that she requested was completely unrelated to her disabilities. The Court
21  agrees and finds that Plaintiff has failed to generate a genuine issue of material fact that
22  would permit her to prevail on this claim. Plaintiff was terminated from the Section 8
23  program because she was evicted from her subsidized housing. This decision was made
24  based on a policy enacted by Defendant that requires termination of benefits when a
25  participant is evicted from her Section 8 housing. The decision was not made based on
26  Plaintiff's disabilities, or for any reason even tangentially related to her disabilities. Thus,
27  while Plaintiff has requested an accommodation that would be "necessary to afford [her] an

28

- 10 -

1  equal opportunity to use and enjoy [her] dwelling," she cannot demonstrate that this has any
2  relation to the "accommodation of the handicap." *Id.*

3        Plaintiff encourages the Court to look beyond the eviction itself, and asks that it
4  inquire as to the landlord-tenant issues that gave rise to the eviction. The Court is disinclined
5  to undertake such an analysis where the decision to terminate assistance was not based on
6  the underlying facts of the eviction, but instead solely on the existence of the eviction itself.
7  Nevertheless, the Court finds that even when it takes the path suggested by Plaintiff, it
8  reaches the same result. During her deposition, Plaintiff was repeatedly asked about the
9  circumstances underlying the eviction. In the colloquy, when Plaintiff was questioned about
10 the substance of the various notices that she received from Carob Tree, she responded that
11 her disabilities did not cause her to commit the assorted lease violations. 42 U.S.C. §
12 3604(f)(1) prohibits discrimination "because of a handicap." Plaintiff has admitted that she
13 violated her lease and has further conceded that these lease violations were not caused by her
14 disabilities.

15       The concept of a reasonable accommodation is quite basic: people with disabilities
16 may have special needs. Simply being disabled does not entitle one to an accommodation
17 that bears absolutely no relation to one's disabilities. Plaintiff was evicted for, among other
18 things, nonpayment of rent. Plaintiff stated in her deposition that her disabilities did not
19 cause her to make untimely rent payments. Within weeks of being evicted from Carob Tree,
20 Plaintiff asked that she be permitted to transfer her voucher to a new housing provider.
21 While Plaintiff framed this demand as a request for a reasonable accommodation based on
22 disability, she was not entitled to an accommodation because the situation that she hoped to
23 rectify was unrelated to her disability. Summary judgment is granted in favor of Defendant
24 on Plaintiff's FHA claim.

25     **D.   The Quality Housing and Work Responsibility Act of 1998**

- 11 -

1   Plaintiff argues that Defendant violated various provisions of the Quality Housing and
2   Work Responsibility Act of 1998. First, Plaintiff alleges that Defendant breached the terms
3   of 42 U.S.C. § 1437c-1(d)(15),[5] which provides that an annual PHA plan must contain:

> A certification by the public housing agency that the public housing agency will carry out the public housing agency plan in conformity with title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], the Fair Housing Act [42 U.S.C.A. § 3601 et seq.], section 504 of the Rehabilitation Act of 1973 [29 U.S.C.A. § 794], and title II of the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12131 et seq.], and will affirmatively further fair housing.

Plaintiff has failed to come forth with evidence of Defendant's noncompliance with any of the statutes listed in § 1437c-1(d)(15), therefore, Plaintiff's claim fails.

Next, Plaintiff claims that Defendant adopted changes to its policies without providing an opportunity for public notice or comment. 42 U.S.C. § 1437c-1(g) gives a PHA the authority to amend a PHA plan at any time after submission to the Secretary. In the case of a "significant amendment or modification," § 1437c-1(g) imposes additional obligations before adoption of the proposed rule change, one of which is "a duly called meeting of the board of directors (or similar governing body) of the public housing agency that is open to the public." Plaintiff contends that the "one strike - you're out" policy for evictions and the limitations on relocations are policy changes that required the additional steps specified in § 1437c-1(g). The Court disagrees. Neither one of these policy changes rises to the level of a "significant amendment or modification," and no notice, comment, or other procedure was required prior to adoption of the revised policies. These minor policy changes were merely clarifications of positions that are plainly permissible interpretations of the federal regulations that govern the Section 8 program. As a matter of law, the Court finds that

---

[5] Although not clear from the citations in her First Amended Complaint, it is apparent that Plaintiff is citing to the version of this statute that was in effect from October 21, 1998 to January 4, 2006, which includes the time of the alleged violation. Without special notation, the Court also cites to this prior version which has subsequently been revised.

1  Defendant complied with § 1437c-1.  Accordingly, Plaintiff has failed to generate a material
2  fact going to Count IV of her Amended Complaint, and she may not bring this claim at trial.

3  **IT IS ORDERED** granting in part and denying in part Defendant's Motion for
4  Summary Judgment (Doc. 63).  Defendant's Motion is granted on Counts I, III, and IV and
5  denied on Count II of Plaintiff's First Amended Complaint.

6  **IT IS FURTHER ORDERED** granting in part and denying in part Plaintiff's Motion
7  for Partial Summary Judgment (Doc. 61).  Plaintiff's Motion is granted on Count II and
8  denied on Counts I, III, and IV of Plaintiff's First Amended Complaint.

9  **IT IS FURTHER ORDERED** that the bench trial set for May 13, 2008 shall be
10 limited to the issue of damages.

12 DATED this 29th day of April, 2008.

*/s/ Susan R. Bolton*
Susan R. Bolton
United States District Judge